UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| JENNIFER DENISE NEYHART, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) CASE NO. 3:17-CV-00437-MGG |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Jennifer Denise Neyhart seeks judicial review of the decision by the Acting Commissioner of the Social Security Administration ("the Commissioner's") denying her disability insurance benefits, and asks this Court to reverse the case or alternatively remand the case. This Court may enter a ruling on this matter based upon the parties' consent. [28 U.S.C. § 636(c)](); [42 U.S.C. § 405(g)](). For the reasons below, the Court remands the decision of the Commissioner for further proceedings consistent with this opinion.

I. **OVERVIEW OF THE CASE**

Neyhart claims an onset of disability effective June 13, 2013, which was caused by physical impairments limiting her ability to engage in sustained work activity, including systemic lupus erythematosus, Reynaud's syndrome, fibromyalgia, and a history of juvenile rheumatoid arthritis. At the time of her alleged onset of disability, Neyhart was a 37-year old woman with a high school education and a brief history of

working as a cashier at Home Depot. Neyhart also worked after her alleged onset date as a substitute teacher and playground aide in the 2014-2015 school year.

Neyhart's application for disability insurance benefits ("DIB") of July 15, 2013, was denied initially and again upon reconsideration. Following a hearing on September 15, 2015, the Administrative Law Judge ("ALJ") issued a decision affirming the Agency's denial of benefits. The ALJ found that Neyhart had no past relevant work [*Id.* at 25]. However, the ALJ found that Neyhart has the residual functional capacity ("RFC") to perform light work as limited by multiple restrictions. [*Id.* at 18]. The ALJ then found that Neyhart has the ability to meet the requirements for employment as a counter clerk, callout operator, and a surveillance system monitor as those jobs are defined by the Dictionary of Occupational Titles. [*Id.* at 26]. Based on these findings, the ALJ denied Neyhart's claims.

Other facts will be included as necessary.

**II.     DISABILITY STANDARD**

The Commissioner follows a five-step inquiry in evaluating claims for disability benefits under the Social Security Act:

> (1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether he can perform his past relevant work; and (5) whether the claimant is capable of performing any work in the national economy.

*Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (citing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the burden of proof at every step except step five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

### III. STANDARD OF REVIEW

This Court has authority to review the Commissioner's decision under 42 U.S.C. § 405(g). However, the Court must give deference to the ALJ's decision so long as it is supported by substantial evidence and the ALJ has built an "accurate and logical bridge" from evidence to conclusion. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (*citing Simila v. Astrue,* 573 F.3d 503, 513 (7th Cir. 2009)). This deference is lessened where the ALJ's findings contain an error of fact or logic, or fail to apply the correct legal standard. *Schomas v. Colvin*, 732 F.3d 702, 709 (7th Cir. 2013). An ALJ decision cannot be affirmed if it lacks evidentiary support or an adequate discussion of the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). At a minimum, an ALJ must articulate her analysis of the record to allow the reviewing court to trace the path of her reasoning and to be assured the ALJ has considered the important evidence in the record. *Scott v. Barnhart*, 298 F3d 589, 595 (7th Cir. 2005). While the ALJ need not specifically address every piece of evidence in the record to present the requisite "logical bridge" from the evidence to her conclusions, *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010), the ALJ must at least provide a glimpse into the reasoning behind her analysis and the decision to deny benefits. *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001).

3

A court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility or substitute its judgment for that of the ALJ. *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). Thus, the question upon judicial review is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). Substantial evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, substantial evidence is simply "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001).

## IV. ANALYSIS

Following the hearing, the ALJ issued a written decision based on the five-step disability evaluation prescribed by the Social Security Administration's regulations. *See* 20 C.F.R. § 404.1520. At step one, the ALJ found Neyhart had not engaged in substantial gainful activity since June 13, 2013, the alleged onset date. [DE 8 at 16]. Notably, the ALJ found that Neyhart's post-onset date work for a school in 2014-2015 did not constitute substantial gainful activity because she did not earn enough. [DE 8 at 16]. At step two, the ALJ found that Neyhart had the following severe impairments: (1) systemic lupus erythematosus, and (2) fibromyalgia. [*Id.* at 17]. The ALJ also noted that Neyhart had the following non-severe medically determinable impairments: (1) "P.O.F."; (2) a

4

thyroid disorder; and (3) Raynaud's syndrome. [*Id.* at 17]. At step three, the ALJ found that Neyhart's systemic lupus erythematosus did not meet or equal the criteria of Listing 14.02 regarding immune system disorders. [*Id.* at 18; *see also* 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 14.02].

Before proceeding to step four, the ALJ analyzed Neyhart's RFC and concluded that she retained the ability to perform some light work, but with multiple restrictions stating that she can

> lift 20 pounds occasionally and 10 pounds frequently, stand and/or walk for up to 4 hours in an 8-hour work period, and sit for up to 4 hours in an 8-hour work period . . . . balance, stoop, kneel, crouch, and/or crawl, but . . . never climb ladders, ropes, or scaffolds . . . . occasionally handle, finger, and feel bilaterally, [while avoiding] all exposure to extreme temperatures, humidity, wetness, and pulmonary irritants such as fumes, odors, dusts, gases, and areas of poor ventilation [while also being] limited to environments with lighting no brighter than normal office lighting.

[*Id.* at 18]. At step four, the ALJ found that Neyhart had no past relevant work, but at step five found that, based on her age, education, work experience, and RFC, Neyhart was able to perform a jobs in the national economy, including counter clerk, callout operator, and surveillance system monitor. [*Id.* at 25–26]. Based on these findings, the ALJ concluded that Neyhart had not been under a disability as defined by the Social Security Administration.

Neyhart argues that the ALJ's decision was not supported by substantial evidence because the ALJ (1) failed to properly evaluate Neyhart's fibromyalgia pursuant to SSR 12-2p; (2) failed to give good reasons for dismissing the opinion of

Neyhart's treating rheumatologist, Dr. Ko; (3) improperly determined that Neyhart's impairments did not medically equal Listing 14.02; and (4) did not support her step five finding with substantial evidence. The Court will consider each issue raised.

A. **ALJ Fails to Properly Evaluate Fibromyalgia Pursuant to SSR 12-2p**

Social Security Ruling ("SSR") 12-2p, entitled "Titles II and XVI: Evaluation of Fibromyalgia," provides background information regarding the disease of fibromyalgia and also sets forth the type of evidence a claimant must provide to the SSA to show that she has a medically determinable impairment of fibromyalgia. 2012 WL 3104869 (July 12, 2012). Additionally, SSR 12-2p explains how the agency evaluates fibromyalgia when determining whether a claimant is disabled. *Id.* at *2.

Such guidance is necessary because fibromyalgia is an elusive and mysterious disease whose symptoms are entirely subjective. *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996). Fibromyalgia "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least three months." SSR 12-2p, at *2. "Its cause or causes are unknown, there is no cure, and . . . . [t]here are no laboratory tests for the presence or severity of fibromyalgia." *Sarchet*, 78 F.3d at 306. Moreover, fibromyalgia "often produce[s] pain and other symptoms out of proportion to the 'objective' medical evidence, it is crucial that the disability adjudicator evaluate credibility with great care and a proper understanding of the disease[]." *Johnson v. Colvin*, No. 13-C-1023, 2014 WL 2765701, at *1 (E.D. Wis. June 18, 2014) (citing *Sarchet*, 78 F.3d at 305). Thus, SSR 12-2p directs

6

adjudicators to evaluate all evidence in the record to determine the effects of a claimant's fibromyalgia pain.

SSR 12-2p identifies both general and specific criteria that can establish a medically determinable impairment of fibromyalgia. Generally, a physician's diagnosis alone is insufficient to establish the impairment. Instead the disability adjudicator is required to "review the physician's treatment notes to see if they are consistent with the diagnosis . . ., determine whether the person's symptoms have improved, worsened, or remained stable over time, and establish the physician's assessment over time of the person's physical strength and functional abilities." SSR 12-2p, at *2. Specifically, adjudicators will find that a claimant has a fibromyalgia impairment with a physician's diagnosis supported by the record and evidence satisfying one of two particular tests[1]. *Id.* at *2–*3. When fibromyalgia is a medically determinable impairment under these standards, it "can be the basis for a finding of disability." *Id.* at *2.

To support a finding of disability, a claimant may present assorted types of evidence including her longitudinal medical record as well as other medical opinions regarding the severity and functional effects of the fibromyalgia itself and in combination with other impairments. *Id.* at *3–*4. Nonmedical sources such as family, friends, employers, teachers, and even SSA interviewers can also be used to establish

---

[1] The 1990 American College of Rheumatology Criteria or the 2010 ACR Preliminary Diagnostic Criteria.

the severity and functional effects of the fibromyalgia in assessing whether the claimant is disabled. *Id.* at *4.

Here, the ALJ found Neyhart's fibromyalgia to be a severe impairment, but never mentioned SSR 12-2p or applied either of the two tests in her Step 2 severity analysis, or in her RFC analysis for that matter. This omission alone is not enough remand the ALJ's decision because failure to mention a controlling SSR is not fatal if the proper analysis was made. *See Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989). However, courts – including this one – have identified an ALJ's failure to mention SSR 12-2p in fibromyalgia cases as one among many errors in ALJ decisions that ultimately justified remand. *See, e.g.*, *Brown v. Colvin*, Case No. 15-cv-1246, 2016 WL 5417184, at *6 (C.D. Ill. Sept. 27, 2016); *McBride v. Colvin*, CIVIL NO. 1:15cv186, 2016 WL 3965106, at *10 (N.D. Ind. July 25, 2016). Therefore, the ALJ's failure here should not be dismissed unless the ALJ's decision shows that it properly considered all the relevant evidence.

Considering the entire record, the ALJ's credibility determination suggests that she did not quite understand the nature of fibromyalgia and how its symptoms can be unrepresented in medical records and tests. Admittedly, the ALJ thoroughly recited evidence of Neyhart's medical testing, diagnoses, and treatment. The ALJ cited Neyhart's testimony about her symptoms with clarity. Yet, the ALJ's decision did not account for the fact that fibromyalgia "often produce[s] pain and other symptoms out of proportion to the 'objective' medical evidence . . . ." *Johnson,* 2014 WL 2765701, at *1. Similarly, the ALJ's decision does not reference the variable nature of fibromyalgia

symptoms.[2] *McBride,* 2016 WL 3965106, at *10 (quoting SSR 12-2p) ("symptoms of [fibromyalgia] can wax and wane so that a person may have 'bad days and good days.'").

Significantly, the Commissioner does not address this lack of analysis on the part of the ALJ in her brief before this Court. Instead, the Commissioner appears to concede that omission of SSR 12-2p constituted an error by the ALJ, but argues that any such error does not justify remand because the ALJ still identified Neyhart's fibromyalgia as a severe impairment. In making the harmless error argument, the Commissioner overlooks SSR 12-2p's guidance to adjudicators on making an overall disability finding in addition to a Step 2 severity determination.

In so doing, the ALJ has failed to show a proper consideration of Neyhart's fibromyalgia and its elusive symptoms despite being afforded guidance on how to do so through SSR 12-2p. This omission leaves the ALJ's credibility determination and RFC unsupported by substantial evidence and worthy of remand to ensure that a complete understanding of fibromyalgia and its effects on Neyhart are accurately accounted for in her RFC and ultimately in her disability determination.

    **B.**    **ALJ Improperly Discounted Neyhart's Treating Physician Opinion**

Under Social Security regulations, an ALJ should give controlling weight to a treating source opinion as long as it is supported by medical findings and is consistent

---

[2] Neyhart also suggests that the ALJ confused symptoms of lupus and fibromyalgia in her decision. With an otherwise insufficient analysis of Neyhart's fibromyalgia, the Court need not address this allegation, for which it lacks the medical expertise to assess.

with substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018).[3] Generally, greater weight is given to the opinions of a treating source because that source is more familiar with the claimant's conditions and circumstances. *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000).

If an ALJ does not give a treating source's opinion controlling weight, the ALJ must consider several factors while determining what weight to give it, and must give good reasons to explain why he gave it that weight. 20 C.F.R. § 404.1527(c). Specifically, an ALJ choosing to discount a treating source's opinion "must consider the length, nature, and extent of the treatment relationship; frequency of examination; the physician's specialty; the types of tests performed; and the consistency and support for the physician's opinion." *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010).

Included in Neyhart's record are two opinions about her functionality in the form of Medical Source Statements from her rheumatologist, Dr. Ko from the University of Chicago Medicine. In those opinions, Dr. Ko reported a number of limitations that would prevent Neyhart from maintaining competitive employment. Some of those limitations included (1) occasional use of the hands bilaterally for reaching and handling; (2) no use of the hands bilaterally for fingering; (3) five hours of rest in the course of an eight-hour workday; and (4) expected absence from work more than three

---

[3] "The treating-physician rule has been modified to eliminate the 'controlling weight' instruction for" claims filed on or after March 27, 2017. *Kaminski v. Berryhill*, 894 F.3d 870, 874 n.1 (7th Cir. 2018). However, the old rule still applies to Smith's claim because it was filed before March 27, 2017. *Id.* (citing 20 C.F.R. §§ 404.1527, 404.1420c).

times a month. [DE 8 at 503–09, 511–18]. In her decision, the ALJ acknowledged these opinions, but afforded them "very little deference for a number of reasons." [DE 8 at 24].

To justify discounting Dr. Ko's opinions, the ALJ discussed a large amount of evidence from the record in what appears to be an attempt to demonstrate that Dr. Ko's opinions were inconsistent with other evidence in the record. The Commissioner suggests that the ALJ succeeded by comparing (1) Dr. Ko's opinions about Neyhart's swelling to the longitudinal record, which only documented intermittent swelling; (2) reports of fatigue in Dr. Ko's opinions to records reflecting that Neyhart was "alert and oriented;" (3) Dr. Ko's assessment of manipulative limitations to examinations showing only slightly reduced grip strength and ability to open a jar, zip, and button without difficulty with no evidence of Dr. Ko having conducted hand testing; (4) Dr. Ko's assessment of emotional limitations to Neyhart's lack of psychological treatment and her ability to drive and work at the school despite claims of difficulty concentrating. [DE 13 at 6–7]. The Commissioner also argues that the ALJ supported giving reduced weight to Dr. Ko's opinion by noting that Neyhart continued working into early 2015 without being terminated for excessive absences in contrast to Dr. Ko's assessment that Neyhart would miss more than three days of work per month. [*Id.* at 7].

Not only do these examples of inconsistency fail to account for the variable nature of fibromyalgia symptoms already discussed above, they also do not explain how these alleged inconsistencies in the record are actually inconsistent with the

11

symptoms of fibromyalgia that often cannot be fully documented by objective medical evidence. *See McBride*, 2016 WL 3965106, at *10 (quoting SSR 12-2p); *Johnson*, 2014 WL 2765701, at *1. Furthermore, the comparisons fail to create a logical bridge between the evidence and the weight given to Dr. Ko's opinion. If a person is "alert and oriented," does that mean they cannot be simultaneously fatigued? And how does driving and working for the school automatically disprove any problems with concentration? Not only does the ALJ's opinion fail to analyze these issues, but it also fails to recognize these issues as critical to a fibromyalgia analysis.

The ALJ's opinion also fails to discuss the 20 C.F.R. § 404.1527(c)(2) factors or even mention them indirectly, an error that on its own can justify remand, or even reversal. *See Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). Moreover, the ALJ's decision only references evidence to justify discrediting Dr. Ko's opinion while failing to acknowledge evidence to support his opinion. As examples of evidence consistent with Dr. Ko's opinion, Neyhart directs the Court to the following notes from the consultative examiner, Dr. Korman: "Fine finger manipulative ability is poor;" "Patient displays mild weakness of grip, sensory loss in fingertips, poor FFM, severe wrist pain (left more than right) on exam," and "Sensory loss noted in both legs." [DE 8 at 300]. Thus, the ALJ's analysis of Dr. Ko's opinion seems show improper cherry-picking of evidence. *See Gerstner*, 879 F.3d at 261–63.

Without a proper explanation for discounting the weight afforded to Dr. Ko's

12

opinions about Neyhart's functionality, the ALJ has failed to support the RFC with substantial evidence such than remand is warranted.

### C. ALJ's Finding that Neyhart's Lupus Does Not Meet Listing 14.02 is Not Supported by Substantial Evidence

Under a theory of presumptive disability, a claimant is eligible for benefits if she has an impairment that meets or equals an impairment found in the Listing of Impairments. 20 C.F.R. § 404.1520(d); 20 C.F.R., Pt. 404, Subpt. P, App'x 1. The Listings specify the criteria for impairments considered presumptively disabling. 20 C.F.R. 404.1525(a). If a claimant's impairment is not listed, the SSA analyzes the claimant's medical "findings with those for closely analogous listed impairments" to determine medical equivalence. 20 C.F.R. § 404.1526(b)(2). At the initial and reconsideration levels of administrative review, "a State agency medical or psychological consultant . . . has the overall responsibility for determining medical equivalence." 20 C.F.R. § 404.1526(e)(1); *see also Scheck v. Barnhart*, 357 F.3d 597, 700 (7th Cir. 2004). However, "at the administrative law judge or Appeals Council level, the responsibility for deciding medical equivalence rests with the administrative law judge or Appeals Council." 20 C.F.R. § 404.1526(e)(3).

Notably, fibromyalgia is not a listed impairment. Therefore, the ALJ considered

Listing 14.02[4] for Systemic Lupus Erythematosus as the most analogous to fibromyalgia. To satisfy the "substantial evidence" standard in the Step 3 analysis, an ALJ "must discuss the listing by name . . . offer more than perfunctory analysis of the Listing . . . consider an expert's opinion on the issue" of whether the claimant's impairment meets a Listing because it is a medical judgment. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004); *see also Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). Neyhart argues that the ALJ improperly relied on the opinions of State Agency medical consultants rather than Dr. Ko in determining that her impairments did not meet Listing 14.02. Additionally, Neyhart contends that Dr. Ko's opinion combined with the record met the Listing requirements.

The ALJ explicitly found that Neyhart's lupus and fibromyalgia did not meet Listing 14.02 because "the longitudinal record lacks the necessary expert medical opinion to support such a finding;" and because she did not supply evidence meeting

---

[4] Listing 14.02 requires:
    A. Involvement of two or more organs/body systems, with:
        1. One of the organs/body systems involved to at least a moderate level of severity; and
        2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).
        or
    B. Repeated manifestations of SLE, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:

        1. Limitation of activities of daily living.
        2. Limitation in maintaining social functioning.
        3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. § Pt. 404, Subpt. P, App'x 1.

the criteria of the Listing. [DE 8 at 18]. In considering the expert evidence, the ALJ cited the State Agency medical consultants who did not opine, either at the initial and reconsideration administrative levels, that Neyhart met or equaled a Listing. Similarly, the ALJ noted that Dr. Ko's opinions did not opine that Neyhart met or equaled a Listing. Without elaboration, the ALJ also stated conclusorily that "the claimant did not show that she met a Listing . . . ." [*Id.*]. While proving a negative is difficult, the ALJ has failed to offer more than a perfunctory analysis of the Listing. *See Minnick*, 775 F.3d at 935; *Barnett*, 381 F.3d at 668. Moreover, the ALJ's apparent reliance on the State Agency consultants' opinions, which did not and could not have considered medical evidence arising subsequent to their review of Neyhart's impairments, is questionable at best. *See* 20 C.F.R. § 404.1526(e)(1), (3). And lastly, if Dr. Ko's opinion is found on remand to be worth of greater weight and Neyhart's fibromyalgia symptoms are more accurately accounted for on remand, the ALJ's analysis of Dr. Ko's opinion related to Listing 14.02 could change.

Therefore, the ALJ's Step 3 Listing analysis is not supported by substantial evidence and must be reconsidered on remand.

### D. Step 5 Analysis

Neyhart's argues that the SSA failed to meet its burden at Step 5 to show that she could perform substantial gainful activity. Neyhart premises her Step 5 argument on the fact that the vocational expert testified that a person with the limitations included in Dr. Ko's opinions would be unable to work. This argument mirrors Neyhart's challenges above to the ALJ's RFC determination. As remand is necessary for the

reasons addressed above, the Court need not discuss Neyhart's Step 5 argument. Upon remand, it is presumed that the ALJ will provide a thorough analysis of Neyhart's RFC, taking into account the issues raised above, from which a proper Step 5 analysis can be completed.

V.     CONCLUSION

For the above reasons, this Court concludes that the ALJ's decision was not supported with substantial evidence. Neyhart, however, has not demonstrated that a reversal for award of benefits is warranted. Therefore, the Court now **REMANDS** this case for further proceedings consistent with this opinion. The Clerk is **DIRECTED** to terminate this case in favor of Neyhart.

**SO ORDERED**

Dated this 28th day of September 2018.

s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge
